UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DONALD K. KESSLER, | : | Case No. 3:11-cv-35 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| PAUL HRIVNAK, | : | |
| | : | |
| Defendants. | : | |

**ORDER: (1) DENYING PLAINTIFF'S MOTIONS FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Docs. 4, 6);
(2) DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 34); and
(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 33)**

This case is currently before the Court on Plaintiff's motions for temporary

restraining order (Doc. 4) and preliminary injunctive relief (Doc. 6), and the parties'

responsive memoranda (Docs. 26, 29, 31). On April 4, 2011, the Court heard oral

argument on the motions.

Also pending before the Court, and integrally related to the motions for temporary

restraining order and injunctive relief, are Defendants' motion to dismiss (Doc. 34) and

the parties' responsive memoranda (Docs. 47, 51); and Plaintiff's motion for summary

judgment (Doc. 33) and the parties' responsive memoranda (Docs. 48, 52).

# I.   BACKGROUND

## A.   History of Palstar and the AT Auto Tuner

Defendant[1] Paul Hrivnak has been working in the amateur ("ham") radio industry

for decades.  Mr. Hrivnak founded, and is currently the President, CEO, and Chief

Engineer of Palstar, Inc.  Palstar is a closely-held corporation, with 100% of its stock

owned by Mr. Hrivnak.  Palstar is a leader in the ham radio industry, through its

development, manufacture, marketing, and sale of ham radio equipment.  (Doc. 26, Ex. 1

at ¶ 5).  In producing and marketing ham radio products, Mr. Hrivnak and Palstar have

used a lettering scheme beginning with "AT" for its antenna tuners, since the early 1980s.

(*Id.* at ¶ 6).  This lettering scheme has garnered wide brand recognition for antenna

tuners, identifying the source of the product as Palstar.  (*Id.* at ¶ 7).

In 1991, Palstar began developing the AT Auto tuner, an automatically controlled

antenna tuner that autonomously adjusts when re-tuning is necessary.  (*Id.* at ¶ 8).  In

2005, Palstar was working on the .95 version of the AT Auto tuner with Laura Lyle, an

employee who had an engineering degree from Carnegie Mellon.  (*Id.* at ¶ 9).  Ms. Lyle

was working on a schematic (that Palstar claims was later given to Plaintiff), as well as

doing some preliminary software work for Palstar and the AT Auto tuner.  (*Id.* at ¶ 10).

Later that year, Plaintiff Donald Kessler began volunteering for Palstar.  (*Id.* at ¶ 11).

---

[1] Plaintiff named eight Defendants in this action: Paul Hrivnak, Palstar, Inc., Peter Kovacs, Eva Hrivnak, RNK Publishing House, LLC, Archaeology 101, Scholarships Archaelogy, Inc., and Navah Distributing Co, LLC.

On May 6, 2008, Plaintiff entered into a formal employment agreement with

Palstar which stated that:

> All ideas, inventions, trademarks, copyrights, and other
> developments or improvements conceived by the Employee,
> alone or with others, during the term of this agreement, whether
> or not during working hours, that are within the scope of the
> Company's business operations or that relate to any Company
> work or projects, are the exclusive property of the Company.
> Employee agrees to assist the Company, at its expense, to obtain
> patents, trademarks, copyrights, or other legal rights in any such
> matters and agrees to execute all documents reasonable and
> necessary to obtain such legal rights in the name of the Company.

(Doc. 26, Ex. 2 at ¶ 4).

While working for Palstar, Plaintiff helped develop a computer program titled the

"AT Auto Firmware" which "facilitates the operation of a ham radio tuner."[2]  (Doc. 3 at

¶¶ 17-18).  Palstar claims that the Firmware clearly fell within the scope of Plaintiff's

employment, as the AT Auto tuner was the only project Plaintiff worked on during his

employment and was marketed and sold by Palstar.  During his employment, Plaintiff

himself drafted the following language for Palstar's website:

> **The AT-AUTO firmware is wholly-owned Palstar, Inc.**
> **intellectual property**, we are protecting it accordingly, and our
> legal department is poised to take whatever legal action if
> necessary to do so. You should realize that considerable time and
> expense has gone into its development. Some of our competitors
> may very likely attempt to bring similar products to the market,
> and in so doing attempt to circumvent much of the development
> costs by coping or otherwise reverse-engineer our firmware. We
> therefore regret that we are unable to divulge any of the firmware
> specifics.

---

[2]  Plaintiff claims that he wrote the program.  (Doc. 6 at 3).

(Doc. 26, Ex. 3).  In addition, Plaintiff agreed to "assist [Palstar], at its expense, to obtain patents, trademarks, copyrights, or other legal rights in any such matters and agrees to execute all documents reasonable and necessary to obtain such legal rights in the name of [Palstar]."  (*Id.*, Ex. 2 at ¶ 4).

Plaintiff resigned from Palstar on August 3, 2010.[3]  (Doc. 26, Ex. 4).  While employed by Palstar, Plaintiff applied for a registered copyright in the AT Auto Firmware.  (Doc. 3 at ¶ 22).  Plaintiff did not disclose on the copyright application that the AT Auto Firmware was a work-for-hire and did not transfer the copyright to Palstar or inform Palstar of the fact that he sought to register the copyright in Palstar's "exclusive property."  (Doc. 26, Ex. 1 at ¶¶ 17-18).

### B.    Other Litigation Between the Parties

Following Plaintiff's resignation, he and Palstar became involved in other litigation in the Common Pleas Court of Miami County, Ohio.[4]  Plaintiff alleged claims for breach of fiduciary duty, failure to properly account, wrongful conversion, unjust enrichment, and wrongful appropriation.  (Doc. 6, Ex. 3).  Palstar filed counterclaims and sought injunctive relief to require Plaintiff to return items that he allegedly misappropriated from Palstar.  (Doc. 26, Ex. 5).  The parties settled the civil action.

---

[3] Plaintiff claims that he unilaterally terminated his Employment Agreement on February 15, 2010.  (Doc. 26, Ex. 5 at ¶ 6).

[4] *Donald Kessler v. Paul Hrivnak, et al.*, Miami County Court of Common Pleas, Case No. 10-cv-385.

On July 22, 2010, the parties entered into a confidential Settlement Agreement and Palstar agreed that it would not:

> manufacture, market or sell the AT Auto tuner, the AT Auto Circuit Board, Controller Board or Firmware. (Doc. 26, Ex. 6 at ¶¶ 5, 7). Palstar granted Plaintiff a license to "manufacture, market and sell a product presently manufactured, marketed and sold by Palstar known as an AT Auto Automatic Antenna Tuner." (*Id.* at ¶ 5). There is no mention of any transfer of the ownership of the copyright in the AT Auto Firmware from Palstar to Plaintiff in the Settlement Agreement.

(*Id.*)

### C.    Breach of the Settlement Agreement

After the Settlement Agreement was consummated, Plaintiff claims that he learned that Defendants were selling infringing works in violation thereof. Palstar maintains that Plaintiff violated the Settlement Agreement, because he posted its terms on eham.net, in direct violation of the confidentiality clause.[5] Palstar also claims that Plaintiff disparaged it in a variety of online forums, which is also a violation of the Settlement Agreement.[6]

---

[5] *See, e.g.,* http://www.eham.net/ehamforum/smf/index.php?action=printpage;topic=66997.0 (posted on July 31, 2010 at 03:29:13 PM) ("As of 10 June, 2010 I own exclusive rights to the AT-AUTO. After 30 July, 2010, Palstar is no longer permitted to manufacture, market, sell, etc., the AT-AUTO."); www.kesslerengineeringllc.com ("We have obtained all rights to the AT-AUTO . . . After 30 July, 2010 the previous manufacturer was required to cease production of the AT-AUTO.").

[6] *See, e.g.,*http://www.eham.net/ehamforum/smf/index.php?action=printpage;topic=66997.0; http://www.kesslerengineeringllc.com/faq.htm;http://www.kesslerengineeringllc.com/tuners.htm.

## II.  STANDARD OF REVIEW

### A.  Temporary Restraining Order/Preliminary Injunction

Plaintiff bears the heavy burden of demonstrating his entitlement to a temporary restraining order and preliminary injunction. "A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Ohio Right to Life Soc'y Inc. v. Ohio Elections Comm'n*, 2:08cv492, 2010 U.S. Dist. LEXIS 103401, at *14 (E.D. Ohio Sept. 20, 2010). Thus, a court should only grant a temporary restraining order if the movant carries his burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Moreover, a temporary restraining order will only be granted where preventative or protective relief is required. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant a TRO and/or a preliminary injunction, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Ne. Ohio Coal. For Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000); *see also Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

### B.  Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint – not to decide the merits of the case.  Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6).  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). That is, "a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

### C.   Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III.   TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

After the settlement agreement was consummated, Plaintiff learned that Palstar had allegedly infringed the AT Auto tuner by selling it at theradiostore.net. Plaintiff claims that Defendants are distributors of the infringing work and accordingly requests this Court to enjoin them from the continued manufacture, sale, or distribution of the product.

### A.   Likelihood of Success on the Merits

To establish infringement of a copyright, a plaintiff must establish two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are original without authorization. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007).

### 1.   Valid copyright

There is no doubt that Plaintiff filed for and received a copyright for the subject work titled "AT-Auto Firmware" on June 24, 2010. (Doc. 6, Ex. 2). The issue in dispute is whether that copyright is valid.

### a. *Work For Hire*

Defendants claim that the AT Auto tuner is a work-for-hire and belongs to Palstar because it was created when Plaintiff was working for Palstar within the scope of his employment. Palstar claims that it began developing the AT Auto tuner in 1991, and by 2005 was on version .95 of the tuner. (Doc. 26, Ex. A at ¶ 9). Later that year, Plaintiff began volunteering for Palstar, and on May 6, 2008, he entered into a formal Employment Agreement which stated that:

> All ideas, inventions, trademarks, copyrights, and other developments or improvements conceived by the Employee, alone or with others, during the term of this agreement, whether or not during working hours, that are within the scope of the Company's business operations or that relate to any Company work or projects, are the exclusive property of the Company. Employee agrees to assist the Company, at its expense, to obtain patents, trademarks, copyrights, or other legal rights in any such matters and agrees to execute all documents reasonable and necessary to obtain such legal rights in the name of the Company.

(Doc. 26, Ex. 2 at ¶ 4).

Defendants allege that while working for Palstar, Plaintiff helped develop a computer program titled the "AT Auto Firmware" which "facilitates the operation of a ham radio tuner." (Doc. 3 at ¶¶ 17-18). Palstar claims that the Firmware fell within the scope of Plaintiff's employment and is therefore its exclusive property. Palstar alleges that from May 6, 2008 through August 3, 2010, when Plaintiff resigned,[7] it developed at

---

[7] Plaintiff claims that he unilaterally terminated his Employment Agreement on February 15, 2010 (Doc. 26, Ex. 5 at ¶ 6), and that Plaintiff's attorney's letter of August 3, 2010 merely formalized (by its own language) the resignation and tendered Plaintiff's stock back to Palstar. (Doc. 26, Ex. 2).

least 16-20 versions of the AT Auto Firmware (Doc. 31, Ex. 1 at ¶ 9), and that those versions were clearly a work-for-hire and the exclusive property of Palstar. In fact, Plaintiff drafted language for Palstar's website stating that "The AT-AUTO firmware is wholly-owned Palstar, Inc. intellectual property." (Doc. 26, Ex. C).

Defendants argue that even if Plaintiff did develop the AT-Auto tuner before he entered into the formal employment agreement, he registered the copyright for the Firmware on June 24, 2010, while he was still employed at Palstar and was contractually required to "assist the company to obtain copyrights." Moreover, Palstar maintains that Plaintiff's secret registration of the copyright for the AT Auto Firmware under his own name, without divulging that it was a work for hire, constitutes fraud on the copyright office, and rebuts the presumptions of validity of his copyright registration certificate. *Jedson Eng'g, Inc. v. Spirit Constr. Servs.*, 720 F. Supp. 2d 904, 913 (S.D. Ohio 2010) ("the affirmative defense of fraud can serve as a basis to rebut the presumption of validity attached to a copyright registration certificate").

Conversely, Plaintiff claims that he is the sole author and owner of a copyright in the AT Auto Firmware. (Doc. 6, Ex. 2). Plaintiff alleges that he began the development of the AT-Auto Firmware in 2005 and had it fixed in a tangible form, *i.e.*, programmed onto a microprocessor for the AT-Auto device in 2006, more than two years before becoming an employee and signing an Employment Agreement with Palstar. (Doc. 29,

Ex. 5 at ¶¶ 3-4).[8] The Employment Agreement applies only to events occurring "with the term of this Agreement." (Doc. 26, Ex. 2 at ¶ 4). Accordingly, Plaintiff maintains that the Firmware could not be a "work for hire." Plaintiff acknowledges that he wrongly allowed Palstar to state that the Firmware was the intellectual property of Palstar (*Id.*, Ex. 5) on its website, but maintains that he never actually made such a transfer.

Whether Plaintiff developed the AT Auto Firmware in the scope of his employment at Palstar is clearly a disputed issue of fact.

### b. Settlement Agreement

Palstar points out that pursuant to the Settlement Agreement, it was required to post on its website that it granted Plaintiff "right[s] to the source code used in the tuner." (Doc. 29, Ex. 7; Ex. 6 at ¶ 1). Palstar argues that if it was not the owner of the copyright and the source code, it could not grant Plaintiff any rights in the source code. Moreover, Palstar maintains that the Settlement Agreement simply gave Plaintiff a license to the copyright for specific enumerated uses - manufacture, marketing, and sale of the AT Auto tuner, not a copyright. (Doc. 26, Ex. 6 at ¶¶ 5, 9).

---

[8] Plaintiff alleges that his April 10, 2006 email titled "AT-AUTO Principal of Operation" establishes that the Firmware cannot qualify as a work for hire because he was not employed with Palstar until May 6, 2008, and the email confirms that he created the Firmware prior to his period of employment. Although this email does establish that Plaintiff was working for or with Palstar in some capacity prior to signing the formal Employment Agreement, it does not establish that Plaintiff in fact created the Firmware. Without the context of this email, the Court is unable to conclude why it was written or even who compiled the information contained therein. The text does not include any express language indicating that Plaintiff created or developed the information contained in the email. The fact that Plaintiff sent an email to Palstar explaining how the Auto tuner worked, does not establish that he created it. Plaintiff repeatedly alleges that the subject work was "fixed in a tangible medium" in 2006, but has failed to evidence this fact to the Court.

However, as the July 30, 2010 deadline approached, Palstar attempted to negotiate with Plaintiff to license the right to use the Firmware for the purposes of continuing to manufacture the AT Auto tuner. (Doc. 29, Ex. 9) (attempting to determine if Plaintiff would agree to an "arrangement to extend Palstar's use of the source code in order to continue the production of that AT Auto beyond July 30, 2010" and noting that "Palstar would pay . . . for the right to use the source code to manufacture [] AT Auto units"). Plaintiff argues that if Defendant had the copyright, it would not have sought a license.

Accordingly, the Court finds that there are disputed issues of material fact which make it impossible to determine summarily if Plaintiff had a valid copyright. Therefore, because Plaintiff is unable to prove ownership of a valid copyright, the Court need not even address whether the AT Auto tuner was copied without authorization. *See, e.g., Microsoft Corp.*, 490 F. Supp. 2d at 878 (to establish infringement of a copyright, a plaintiff must establish two elements: (1) ownership of a valid copyright and (2) copying constituent elements of the work that are original without authorization).

### 2. Copying work without authorization

#### a. *Manufacture*

Debra O'Neal was employed as an assembler of AT-Auto tuners at Palstar from 2006 until late November 2010. (Doc. 29, Ex. 3 at 2). Ms. O'Neal stated that "during the period of August to November 2010; I personally assembled and built numerous AT-Auto tuners for Palstar on the direct orders of Paul Hrivnak." (*Id.* at ¶ 8). Ms. O'Neal further stated that "during this time period [after July 2010], Paul Hrivnak's concentration on building additional AT-Auto tuners was so great that Paul ordered us to delay warranty and repair work in order to have more time to build new AT-Auto Tuners." (*Id.* at ¶ 11).

-13-

Palstar claims that Ms. O'Neal is a disgruntled former employee and therefore not a credible witness.[9] (Doc. 31, Ex. 1 at ¶ 14). Furthermore, Palstar alleges that Ms. O'Neal informed other employees that she was working on replacement AT tuners that were solely for warranties and repairs. (Doc. 31, Ex. E at ¶ 4). Palstar claims that all of the alleged AT-Autos at issue [manufactured after July 30, 2010] refer to warrantied products or products in need of repair where replacement was necessary. (Doc. 29, Ex. 5 at 5; Ex. 8 at 2).

Again, the Court finds that these are disputed issues of fact which make it impossible to determine summarily whether the Auto Tuner was manufactured without authorization.

### b.    Maintenance and Repair/First Sale Doctrine

All of these arguments (First Sale Doctrine, Section 117 defense, implied license) are predicated on the assumption that Plaintiff is the rightful owner of the copyright, and because the Court is unable to make that determination at this time, the Court declines to address these arguments because they are immaterial to the Court's determination of the pending motions.

### c.    Marketing

Palstar admits that it failed to take down the AT Auto webpage as required by the Settlement Agreement. (Doc. 31, Ex. 1 at ¶¶ 16-18). Palstar claims that it was unaware

---

[9] Defendant also claims that Ms. O'Neal was found guilty of passing bad checks and failure to comply with the Ohio Department of Taxation. (Doc. 31, Ex. C). Additionally, Defendant maintains that Ms. O'Neal borrowed money from Mr. Hrivnak for rent and never repaid it. (Doc. 31, Ex. A at ¶ 15).

that the website was accessible until it read Plaintiff's reply memorandum, but that upon learning of the mistake, immediately took the page down.[10] (*Id.* at ¶ 21). To the extent this constitutes a violation of the Settlement Agreement, Palstar claims that it was inadvertent and immaterial and that no customers attempted to purchase an AT Auto tuner from that page after the July 30, 2010 deadline. (*Id.* at ¶ 22). Defendant claims that because it was not accessible from any site, the public would have had to physically type in the address, http://www.palstar.com/at-auto-php, to access the page.

### B.   Whether Plaintiff Will Suffer Irreparable Harm

The Sixth Circuit has recognized that a plaintiff in a copyright infringement action establishes a rebuttable presumption of irreparable harm by showing that its valid copyright has been infringed. *Form Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988). Irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991).

Plaintiff maintains that he faces irreparable harm absent a preliminary injunction, and that if Defendants are not enjoined from producing and distributing his work, it will continue to be used in an unauthorized manner and with false and misleading indication that the subject work is the property of Palstar or others. Palstar stipulates to injunctive relief prohibiting the manufacture, marketing, or sale of the AT Auto Firmware, because it maintains that it is not manufacturing, marketing or selling the product. (Doc. 26 at 15).

---

[10] The Court was unable to access the website on March 31, 2011.

Moreover, Plaintiff, through his attorney, accused Palsar of infringing its copyright and threatened litigation as early as July of 2010 – nearly 10 months ago. (Doc. 26, Ex. I). Still, Plaintiff did not seek injunctive relief until March 2011, eight months later. *See, e.g., H.D. Vest, Inc., v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09cv390, 2009 U.S. Dist. LEXIS 52950, at *4 (N.D. Tex. June 23, 2009) (five-month delay in moving for preliminary injunction "is sufficient to rebut a presumption of irreparable harm."). This significant delay in seeking relief further supports a finding that Plaintiff is not suffering irreparable harm.

### C. Whether the Issuance of an Injunction Would Cause Substantial Harm to Others and/or Serve the Public Interest

"Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Microsoft Corp.*, 490 F. Supp. 2d at 883.

Plaintiff claims that Defendants cannot argue substantial harm given that liability is clear and the requested injunction only requires that Defendants comply with the Copyright Act. *Microsoft Corp.*, 490 F.Supp. at 883 ("With regard to the balance of hardships, the Court finds a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the Copyright Act and Lanham Act."). Additionally, Plaintiff alleges that Defendants cannot provide a basis for denying the requested injunction even if Defendants argue they

-16-

would suffer a considerable financial loss if an injunction was granted, because copyright law does not condone a practice of "infringe now, pay later." Copyright notification and registration put potential infringers on notice that they must seek permission to copy a copyrighted work or risk the consequences. *Woods v. Universal City Studios*, 920 F.Supp. 62, 65 (S.D. N.Y. 1996).

Palstar maintains that injunctive relief prohibiting it from honoring its warranty obligations will irreparably harm both Palstar and its customers. Palstar alleges that it would be subject to legal battles because an injunction would force it to breach its contractual duty to honor the warranties that it extended to its customers.[11]

The Court finds that the public interest weighs in favor of allowing Palstar to continue fulfilling its warranty obligations and permitting it to repair the AT Auto tuners as required pursuant to contractual obligations with consumers.

Balancing the four factors to be considered when determining whether to grant a motion for a TRO and/or preliminary injunction, this Court finds that Plaintiff has failed to carry the heavy burden of demonstrating his entitlement to either extraordinary remedy.

---

[11] Additionally, Defendants allege that Plaintiff's unclean hands provide additional support for a denial of the injunctive relief. "The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct invovling fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc., v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995). In this case, Defendants allege that Plaintiff committed fraud on the Copyright Office and are pursuing counterclaims for declaratory judgment, conversion, breach of the settlement agreement, tortious interference with contract, unfair competition, trade dress infringement, abuse of process, and malicious prosecution. (Doc. 36).

## IV. MOTION TO DISMISS

Defendants claim that Plaintiff filed this action against several "Unrelated Defendants," including: (1) Eva Hrivnak (Paul's mother), an individual who serves as the registered agent for several corporations and the treasurer of Palstar; (2) Archaeology 101, an archaeology educational resource company that sells t-shirts and is working on a documentary; (3) Scholarships Archeology, Inc., a non-profit entity that is working to raise money for archaeology digs and education between Israelis and Palestinians; (4) Navah Distributing Co., LLC, a company that has not conducted business since 2004; and (5) RNK Publishing, LLC, a book publisher. (Doc. 26 at Ex. H). Defendants filed a motion claiming that these entities were totally unrelated to the manufacturing of the tuner at issue and should be dismissed.

Subsequently, Plaintiff voluntarily dismissed Defendants Paul Hrivnak, individually; Archaeology 101, LLC; Scholarships Archaeology, Inc.; and Navah Distributing Co., LLC. (Doc. 35). Accordingly, the only Defendants in dispute are RNK Publishing House, LLC and Eva Hrivnak.[12]

---

[12] Defense counsel argues that the dismissed Defendants should be awarded their fees and costs incurred in filing the motion to dismiss, which was filed less than two hours before Plaintiff dismissed claims against them. (Doc. 51 at 2). The Court declines, however, to award fees for Defendants' preparation of the motion to dismiss as the motion was not rendered entirely moot, as two "Unrelated Defendants" remain in dispute and the legal arguments as to those Defendants are still relevant. Moreover, Defendants fail to cite any authority that provides for fees and costs under such circumstances.

### A.    RNK Publishing House, LLC

RNK Publishing House is the registrant of the domain name theradiostore.net,

through which allegedly infringing products were sold.  (Doc. 47, Ex. 1).  Notably,

Defendant Peter Kovacs is registered as both the "Administrative Contact" and the

"Technical Contact" on the registration.  Plaintiff alleges that if copyright infringement

can be shown, the owner of the channel making the infringing distributions would be

liable for such distributions.  17 U.S.C. § 106(3).

Defendant submits that courts have recognized that a domain name registrant may

not actually be the same person/entity that is involved in the day-to-day operation of the

website and have refused to equate the "registrant" with the "operator" of the website.

*See, e.g., McMann v. Doe*, 460 F. Supp.2d 259, n.9 (D. Mass. 2006) ("the operator of a

website may be different from the registrant).  This Court recognizes that just because

RNK Publishing House is the registrant of theradiostore.net, it does not therefore mean

that RNK is the owner of the website and subject to liability.  However, whether RNK is

the owner and operator is a disputed issue of fact, especially given the fact that Mr.

Kovacs is the company contact.

Accordingly, the Court finds that sufficient facts have been alleged to state a claim

against RNK Publishing House, LLC.

### B.    Eva Hrivnak

Mr. Kovacs claims that he asked Ms. Hrivnak to ship an AT Auto tuner which had

been purchased by a customer on theradiostore.net. (Doc. 31, Ex. F at ¶ 6). After shipping the tuner, Ms. Hrivnak allegedly asked Ms. Jenkins (a Palstar employee) to send an email confirming that the tuner had been shipped. (*Id.* at ¶ 7). Defendant claims that Peter Kovacs opened theradiostore.net two decades ago and has been the sole individual running the store. (Doc. 29, Ex. 15). The website states that "TheRadioStore.net is a fully-owned business of entrepreneur Pete Kovacs. It is not in any way owned by or affiliated with Palstar, Inc. beyond that of a manufacturer-dealer relationship." (Doc. 29, Ex. 15). Mr. Kovacs is a former employee of Palstar, but in 2007 he moved to Israel and has not been an employee since early that year. (Doc. 29, Ex. 15). Defendant alleges that in order to keep theradiostore.net running from overseas, he rented a storage room from Palstar at the 9676 N. Looney Road facility and that his mother, Eva Hrivnak, assists with the shipping of items sold on theradiostore.net. (*Id.*)

Ms. Hrivnak testified that she personally directed the distribution of at least one allegedly infringing copy of the subject work. (Doc. 31, Ex. 6). Ms. Hrivnak clearly testified that she distributed copies of the subject work on behalf of theradiostore.net, and not as an employee of Palstar. Therefore, Plaintiff alleges that she could not have been acting in her capacity as an officer and employee of Palstar, but either as an individual or as an agent for theradiostore.net. Defendant claims that the fact that Ms. Hrivnak assisted her son by shipping certain products that had been purchased through her son's business on the internet does not make her personally liable for the alleged acts of

-20-

"theradiostore.net."

It is unclear at this point in the litigation whether Ms. Hrivnak was acting in her individual capacity or as an agent for Palstar, but it is clear that she was instrumental in facilitating at least one sale on at theradiostore.net. Accordingly, there are sufficient facts to state a claim against Eva Hrivnak.

## V. SUMMARY JUDGMENT

Plaintiff's motion for summary judgment is based entirely on a statement made during oral argument on the motion for temporary restraining order:[13]

> **The Court:** And did it grant to the plaintiff an exclusive license to sell this thing?
>
> **Mr. Sanchez:** Yes, Your Honor, it did. And I was going to address that point because before it was argued that the only way you could have that is if you owned the copyright. That's incorrect. Obviously, a copyright owner can provide a license for the exclusive right to market, sell or manufacture a product, and that's exactly what happened in this case.

(4/4/11 oral argument transcript). It is clear from the express language of the transcript, that Palstar granted Plaintiff an exclusive license or an exclusive right[14] to do three

---

[13] Plaintiff amended its original motion for summary judment (which pertained soley to defense counsel's statements during oral argument), to a motion for partial summary judgment on the issue of liability for copyright infringement and unjust enrichment, which this Court has addressed *supra* in its injunctive relief analysis. (Doc. 52 at 15).

[14] An exclusive license is good against the whole work, even against the copyright holder. *U.S. Naval Institute v. Charter Communic'ns, Inc.*, 936 F.2d 692, 695 (2nd Cir. 1991) (citing 3 Nimmer § 12.02) (An exclusive license thus destroys the value of a copyright to the copyright owners, to the extent that the licensed rights cannot be used or exploited by the copyright owners.).

specific things: (1) manufacture; (2) market; and (3) sell "a product presently

manufactured, marketed and sold by Palstar known as an AT Auto Automatic Antenna

Tuner" and "a product known by the Parties as a Coaxial Switch." (Doc. 25, Ex. 6 at ¶¶

5, 9). Palstar maintains that it did not grant Plaintiff a wholesale exclusive license to do

whatever he wanted with the Firmware, the Coaxial Switch, or the AT Auto tuner. *See,*

*e.g., Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) ("[u]nder current copyright law,

exclusive licenses are recognized as a type of an ownership interest, conveying a

particular exclusive right of copyright"); *Liberty Publ'ns, Inc. v. Med. Exon. Co.*, 548

F.Supp. 1231, 1233 (E.D. Penn. 1982) ("under the [Copyright] Act the owner of a

copyright has certain divisible rights which may be transferred in whole or in part by

means of an exclusive license").

   Moreover, it is black-letter law that "[a]rguments of counsel are not to be

construed as evidence." *In re: Carbone Cos., Inc.*, 395 B.R. 631, 637 (Bankr. N.D. Ohio

2008). In fact, courts in this circuit have made it a practice to always issue "the

cautionary jury instruction . . . that the statements are arguments of counsel are not

evidence." *Brown v. Teledyne Cont'l Motors, Inc.*, No. 1:06cv26, 2007 Dist. LEXIS

18179, at *15 (N.D. Ohio Mar. 15, 2007).

   This case is ladened with disputed material facts, including 14 competing

declarations that expressly contradict each other. (*See, e.g.*, Doc. 3 at Ex. 3, 4; Doc. 4 at

Ex. 1, 3, 4; Doc. 23 at Ex. 1; Doc. 26 at Ex. 1, 5, 8; Doc. 29 at Ex. 3, 5; Doc. 31 at Ex. 1,

5, 6). Accordingly, Plaintiff's motion for summary judgment is denied.

## VI. CONCLUSION

Accordingly, for the reasons stated herein:

1.     Plaintiff's motions for a temporary restraining order (Doc. 4) and preliminary injunctive relief (Doc. 6) are **DENIED**;

2.     Plaintiff's motion for summary judgment (Doc. 33) is **DENIED**[15]; and

3.     Defendants' motion to dismiss (Doc. 34) is **DENIED**.

**IT IS SO ORDERED**.

Date:    5/31/11

Timothy S. Black
United States District Judge

---

[15] Given the Court's disposition of the motion for summary judgment, Defendants' motion to strike or, in the alternative, for leave to file a reply (Doc. 53) is **DENIED** as **MOOT**.

-23-